IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ALBERTA L. HOFFSWELL,**

    **Plaintiff,**

vs.                                       No. CIV 97-438 MV/RLP

**HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on Defendant Hartford Life and Accident Insurance Company's Motion for Summary Judgment filed January 20, 1998 **[Doc. No. 42]**. The Court, having considered the motion, response, reply, and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED**.

### PROCEDURAL BACKGROUND

On March 3, 1997, Plaintiff, an employee of Hughes Aircraft Company, filed a complaint in New Mexico State District Court seeking to collect benefits under the Short-Term and Long Term Disability Plans offered to employees of Hughes Aircraft Company. Defendant removed the case to this Court on April 3, 1997, on the ground that the action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461. Plaintiff subsequently filed an Amended Complaint in this Court on June 2, 1997.

On January 20, 1998, Defendant filed the instant motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure alleging that Plaintiff is not entitled to short-

term or long-term disability benefits from Defendant because she is not "totally disabled" as defined by the policies.

## LEGAL STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1).  Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving

party's case.  *Celotex*, 477 U.S. at 325.  In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## FACTUAL BACKGROUND

The undisputed facts of this case reveal that Plaintiff was a participant under the Hughes Aircraft Company's Short-Term and Long-Term Disability Plans ("the Plans").  The Plans were sponsored by Hughes Aircraft Company and were fully insured by Defendant.  The Plans are "employee welfare benefit plans" governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.

The Short-Term Disability Plan contains the following provisions relevant to this case:

MAXIMUM PAYMENT PERIOD: 180 Calendar days.

The Maximum Payment Period starts on the first day on which you are Totally Disabled.

BENEFITS COMMENCE:

Accident or Sickness-The first to occur of:

(1)  the 1st day you are hospital confined for at least 24 hours;
(2)  the 1st day you are treated on an outpatient basis for a surgical operation, and the disability
 continues at least 8 consecutive calendar days; or
(3)  the 8th calendar day.

Also, benefits will be payable from the 1st day of the disability if the disability continues at least 14 consecutive calendar days.

OTHER INCOME REDUCTIONS

Subject to the Minimum Weekly Benefit, your Weekly Disability Benefit Amount Payable for any weekly period will be reduced by the sum of all other income which you are eligible to receive for the same weekly period.

Other income includes the amount of any:

(1) income from your employer;

3

. . . . .

If, while covered under this Benefit, you become totally and continuously disabled because of:

(1) injury;
(2) sickness; or
(3) pregnancy,

The Hartford will pay a Weekly Disability Benefit. No benefit, however, will be payable for any day on which you are not under the care of a Physician.

Subject to the Minimum Weekly Benefit, the amount of any Weekly Disability Benefit payable shall be reduced by the total amount of any payments you receive or are entitled to receive for the same weekly period under any state law.

. . . .

**Definition for the Benefit**

"Totally Disabled" means that you are unable to do the material and substantial duties of your occupation.

*See* Hughes Aircraft Company's Short-Term Disability Plan, attached as Exhibit A-1 to Defendant's Motion and Memorandum in Support of Summary Judgment, at p. 5-6, 11-12.

The Long Term Disability Plan contains the following provisions relevant to this case:

ELIMINATION PERIOD: The first 180 calendar days of any one period of Total Disability.

. . . .

DEFINITION OF TOTAL DISABILITY

**Totally Disabled** means that:

(1) during the Elimination Period; and
(2) for the next 18 months,
you are prevented by Disability from doing all the material and substantial duties of your own occupation on a full time basis.

After that, and for as long as you remain Totally Disabled, you are prevented by Disability from doing any occupation or work for which you are or could become qualified by:

(1) training;
(2) education;
(3) experience.

. . . .

**Disability** means any accidental bodily injury, sickness, or pregnancy.

. . . .

4

> **Elimination Period** means the period of time you must be Totally Disabled before benefits become payable. See the Plan of Insurance for the Elimination Period.

*See* Hughes Aircraft Company's Long Term Disability Plan, attached as Exhibit A-2 to Defendant's Motion and Memorandum in Support of Summary Judgment, at p. 4 & 6. Under both of the Plans, Defendant is given "full discretion and authority" to determine eligibility for benefits and to construe and interpret the terms of the Plans. *Id.* at 3.

On February 27, 1995, Plaintiff was treated for acute bronchitis by Dr. Owyang. Plaintiff submitted a short-term disability income claim to recover benefits under the employee benefit plan on March 3, 1995. On March 6, 1995, Defendant sent a letter to Plaintiff acknowledging her claim and asking Plaintiff to (1) contact her state office to file for statutory disability benefits; (2) have her physician call Defendant to provide medical information; and (3) sign the authorization form. The letter also informed Plaintiff that short-term disability benefits may commence no earlier than her first day of a leave of absence without pay and asked her to notify Hartford when she was in unpaid leave status. *See* Exhibit A-3 to Defendant's Motion and Memorandum in Support of Summary Judgment at Doc. Nos. 000002-000003.[1] Hughes subsequently informed Defendant that Plaintiff's last day of paid leave would be March 27, 1995. Doc. No. 000004.

On March 9, 1995, Defendant discussed Plaintiff's medical status with Sandy at Dr. Owyang's office. According to Defendant's log, Sandy indicated that Plaintiff was a new patient and that no disability certification had been made.[2] On March 13, 1995, Defendant advised

---

[1] Documents contained in Exhibit A-3 to Defendant's Motion and Memorandum in Support of Summary Judgment will hereafter be referenced solely by their six-digit Bates number.

[2] Apparently Plaintiff was being treated by Dr. Owyang because her primary care physician was temporarily unavailable.

Plaintiff that Dr. Owyang had not certified that she was disabled and that disability benefits could not be paid without a doctor's certificate of disability.

On March 27, 1995, Defendant authorized Plaintiff's claim for total disability benefits from February 28, 1995 until March 13, 1995, but informed her that no benefits were due because she was paid by her employer for that period.  Doc. No. 000008.

On March 31, 1995, Defendant received an Attending Physician's Statement and office notes from Dr. Owyang.  The notes reflected, in relevant part, that:

> 1.  February 27, 1995.  Plaintiff has an earache, cough, headache, nausea, diarrhea and her lungs have an abnormal wheeze.  Plaintiff diagnosed as having asthmatic bronchitis.
>
> 2.  March 2, 1995.  Plaintiff is slightly better but continues to have a "wheeze predominately at the bases."  Chest x-ray is essentially unremarkable except for hyperinflation.  Plaintiff diagnosed with acute bronchitis.
>
> 3.  March 3, 1995.  Plaintiffs states that she is feeling slightly better.   She has phlegm, a cough and her lungs continue to have an abnormal wheeze.
>
> 4.   March 7, 1995.  Plaintiff indicates that she is "feeling a lot better."  Her cough is found to be much better but still deep and productive.  Her lungs appear normal.
>
> 5.  March 14, 1995.  Plaintiff referred to allergist.
>
> 6.  March 21, 1995.  Plaintiff's "coughing is better."

 Doc. Nos. 000012-000016.

In the Attending Physician's Statement, Dr. Owyang diagnosed Plaintiff with acute bronchitis which had improved.  Dr. Owyang indicated that the chest x-ray was negative.  He described her physical limitations and restrictions as Class 4, which indicates that she should have "moderate limitation of functional capacity; capable of clerical/administrative (sedentary) activity."  Doc. Nos. 000017-000018.  Dr. Owyang believed her physical limitations would last

another two to three weeks.  *Id.*

Defendant subsequently requested that Dr. Owyang answer additional questions, including identifying Plaintiff's "disabling symptoms, if any," her treatment plan, her activity restrictions, and criteria for her return to work, and requested copies of Dr. Owyang's office notes.  Doc. Nos. 000019-000022.

On April 17, 1995, Defendant received additional medical records from Dr. Amato, Dr. Roethe, and Dr. Groncy.  Dr. Amato, Plaintiff's primary care physician, indicated in a letter dated April 10, 1995, that he was treating Plaintiff for a "respiratory problem" and noted that Plaintiff had been referred to a Pulmonary Specialist and an Allergist to help determine the cause of her respiratory problem.  Dr. Amato asked that Plaintiff's disability be extended until May 1, 1995, to allow adequate time to evaluate the patient.  Doc. No. 000026.

Dr. Roethe, the pulmonary specialist to whom Plaintiff was referred by Dr. Amato, stated in his letter dated March 29, 1995, that:

> On examination the patient's lungs are clear.  There is no significant reduction or diminution of breath sound intensity.  There is no adventitial sounds or wheezing heard even on forced expiration.  No inspiratory rales.  Her recent chest x-ray performed was normal or clear, including heart size.  No supraclavicular or cervical lymphadenopathy or nodules on the chest wall.  Ears, nose, and throat reveals postnasal drip on both sides coming down the posterior pharynx from the sinuses.  My impression is that the patient has sinusitis.  She may have chronic bronchitis secondary to smoking cigarettes and may or may not have asthma on top of it.  I feel it will be necessary...to go ahead and obtain pulmonary function studies in the next week or two. ... We will see her back after the results of all of these are done and then make a specific diagnosis and recommendations for treatment.
> Doc. Nos. 000027-000028.

Dr. Groncy, the Allergist to whom Plaintiff was referred by Dr. Amato, stated in a letter dated April 3, 1995, that Plaintiff shows mild reactivity to grass, weed, and environmental

7

allergens.  Doc. Nos. 000029-000030.

On April 19, 1995, Defendant requested a nursing review.  The nursing review indicated that there were no objective findings to support disability benefits beyond March 29, 1995 because Dr. Roethe was unable to verify a diagnosis of bronchitis or asthma.  Doc. No. 000032-000033.  Defendant subsequently received additional medical records from Dr. Amato and Dr. Roethe on April 26 and April 28, 1995.  Dr. Amato's notes from an April 18, 1995 visit with Plaintiff stated that the "patient's lungs are markedly improved but she is still weak, tired, fatigues easily and she is now having multiple joint pain."  Doc. No. 000037.  He also noted that her lungs reveal "no rales, rhonchi or wheezing.  She does have some decreased respirations."  *Id.*

Dr. Roethe's April 7, 1995 notes indicate that Plaintiff's "pulmonary function studies clearly show mild but definitely present chronic obstructive lung disease of the chronic bronchitic type" and that "pulmonary function studies reveals [sic] mild dysfunction, particularly in the smaller airways which tend to improve with bronchodilators.  This is consistent with the diagnosis of asthma.  At the present time, however, it would seem to be mild or possibly subclinical."  Doc. Nos. 000038-000042.

On May 10, 1995, Defendant advised Plaintiff that her disability was medically substantiated for the period of February 28, 1995 through March 29, 1995 but that based on the objective findings of Dr. Roethe's examination, the results of the Pulmonary Function Study, and Dr. Amato's examination, total disability was not substantiated after March 29, 1995.  Doc. Nos. 000043-000046.

Plaintiff subsequently asked Defendant to reconsider her claim and provided another letter from Dr. Amato which stated that "Ms. Hoffswell is constantly exposed to allergens and chronically

8

[sic] suffers with coughing, wheezing, chest discomfort, and fatigue. Due to this she is unable to perform her work duties. I have extended Ms. Hoffswell's disability to June 13, 1995." Doc. Nos. 000049-000050. Defendant conducted another nursing review based upon this additional information and concluded that the allergies referred to in Dr. Amato's letter were not disabling and the additional medical information did not support Plaintiff's inability to perform her sedentary job. Doc. No. 000052.

Plaintiff was informed on June 29, 1995 that the additional medical information from Dr. Amato had been reviewed but that the new information did not alter the original decision denying benefits beyond March 30, 1995. Plaintiff was advised that she could submit additional documentation to support her claim and that if she had no additional information, she had 60 days to appeal the decision. Doc. Nos. 000053-000055.

Plaintiff retired from Hughes Aircraft Company and moved from California to Albuquerque, New Mexico in June of 1995. On February 26, 1996, Plaintiff wrote a letter to Defendant requesting that her case be reopened and reviewed. Defendant subsequently received medical records from Dr. Stern, Plaintiff's treating physician in New Mexico. The office notes from Dr. Stern reveal, in pertinent part, the following:

> 1. June 27, 1995. "Get Acquainted" visit. Patient reports that she has chronic problems, including allergies and bronchitis. She also reports fatigue and weight loss.
>
> 2. June 29, 1995. Follow up visit. Allergies, bronchitis and asthma not listed as part of the diagnosis.
>
> 3. July 3, 1995. Follow up visit. Allergies are better and patient has an easier time breathing and speaking.
>
> 4. July 17, 1995. Visit unrelated to bronchitis, allergies, or asthma.

9

5. September 21, 1995. Follow up visit for hypertension. No reference is made to bronchitis, allergies, or asthma. Lungs are clear.

6. October 23, 1995 visit for annual PAP. Patient is "without complaints and seems to be doing well." Lungs are clear.

7. November 27, 1995. Patient reports nasal drainage and cough. Lungs are clear. Patient is diagnosed with bronchitis.
Doc. Nos. 000058-000066.

Defendant wrote to Plaintiff on April 2, 1996 and advised her that it had reviewed the additional medical information from Dr. Stern, along with the previously submitted medical information, but that their decision that Plaintiff is not totally disabled as that term is defined in the Short-Term Plan was unchanged. Doc. Nos. 000069-000071.

On May 23, 1996, Plaintiff's attorney wrote to Defendant appealing the denial of her disability claim. Included with the letter was a Hughes Time Off Benefit Authorization dated April 14, 1995 and an Employment Development Department Claimant's Certification signed by a New Mexico treating physician on June 22, 1995. Doc. Nos. 000072-000075. Defendant responded that they had reviewed the documents, along with all previously submitted medical information, and that the additional information did not alter their original determination that Plaintiff was not totally disabled. Defendant clarified that no objective medical findings were presented to support Plaintiff's claim and therefore, Plaintiff's claim for disability benefits after March 28, 1995 was denied. Doc. Nos. 000080-000083.

Plaintiff appealed Defendant's decision on August 9, 1996. Defendant responded on September 25, 1996, indicating that their determination was not altered because no additional information was provided with the appeal. Doc. No. 000085. Plaintiff subsequently provided an additional medical record from Dr. Stern dated October 10, 1996 which stated that the patient has

"multiple medical problems including rheumatoid arthritis, hypertension, allergic rhinitis, and bronchitis with asthma components.  Patient reports being unable to work in her previous office environment and I suspect the patient will remain sensitized to many office type environments."  Doc. No. 000089.  After reviewing this letter, Defendant wrote to Plaintiff and reiterated that the findings were not indicative of a disabling condition which prevented Plaintiff from performing the material and substantial duties of her sedentary occupation at Hughes.  Therefore, Plaintiff did not satisfy the Plans' definition of Totally Disabled after March 28, 1995.  Plaintiff subsequently filed this action claiming that she is entitled to short-term disability and long-term disability benefits under the provisions of the Plans and that Defendant abused its discretionary authority by processing Plaintiff's claim and appeal in a perfunctory and arbitrary manner.

## DISCUSSION

**Employee Retirement Income Security Act**

The Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, comprehensively regulates employee welfare-benefit plans.  An employee welfare-benefit plan is defined as one which provides to employees "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability [or] death," whether these benefits are provided "through the purchase of insurance or otherwise."  29 U.S.C. § 1002(1).  Plans may self-insure or they may purchase insurance for their participants.  ERISA establishes various uniform procedural standards concerning reporting, disclosure, and fiduciary responsibility but it does not regulate the substantive content of welfare-benefit plans.  *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983).

**Standard of Review**

Selection of the proper standard of judicial review of a denial of benefits claim under § 1132 (a)(1)(B) turns on the terms of the plan.  Under *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989), a court must review *de novo* a company's denial of benefits unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case a court reviews a benefits denial under the narrower arbitrary and capricious standard.  *Id*. at 115.  "An administrator's action is arbitrary and capricious if it is based on a 'lack of substantial evidence, mistake of law, bad faith, [or] conflict of interest.'"  *Counts v. Kissack Water and Oil Serv., Inc.*, 986 F.2d 1322, 1324 (10th Cir. 1993) (quoting *Winchester v. Prudential Life Ins. Co*., 975 F.2d 1479, 1483 (10th Cir. 1992)).

The Plans gave Defendant "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions" of the Plans.  *See* Hughes Aircraft Company's Short-Term Disability Plan, attached as Exhibit A-1 to Defendant's Motion and Memorandum in Support of Summary Judgment Plans at 3.  Thus, under *Firestone*, a reviewing court must uphold Defendant's denial of benefits for Plaintiff unless it was arbitrary and capricious.  However, when an insurer also determines eligibility for benefits, a potential conflict of interest exists and courts impose a "more stringent version of the abuse of discretion standard" to the administrator's decision.[3]  *Taft v. Equitable Life Assurance Society*, 9 F.3d 1469, 1474 (9th Cir. 1994).  If an administrator or fiduciary empowered to interpret the plan "is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an

---

[3] Arbitrary and capricious standard for reviewing decision by an ERISA plan administrator to deny benefits is analogous to abuse of discretion standard.  *See Schierholz v. Goldman Financial Group, Inc., Retirement Plan*, 875 F.Supp. 595, 597 (E.D. Mo. 1995).

abuse of discretion.'" *Bruch*, 489 U.S. at 115 (quoting Restatement (Second) of Trusts 187, comment d (1959)).  Defendant, as both insurer and fiduciary, has a potential conflict of interest that requires the Court to utilize the more stringent version of the arbitrary and capricious standard in reviewing its denial of benefits to Plaintiff.

As an initial matter, the Court notes that while the parties quibble over several points, including the relevance of Plaintiff's retirement plans, whether Defendant prejudged its exposure to long-term disability liability, and the type of leave Plaintiff used during her illness, Plaintiff has not established the existence of any controverted material facts.  As there are no disputed material facts, summary judgment is an appropriate dispensation of this case.

**Full and Fair Review**

Plaintiff alleges that Defendant breached its fiduciary duties by processing Plaintiff's claim and appeal in a perfunctory and arbitrary manner.  ERISA provides that a plan must follow certain procedural steps when denying benefits to a plan participant.  First, the plan must provide the participant with written notice of the denial which sets forth the specific reasons underlying the decision.  29 U.S.C. § 1133(1).  Second, the plan must "afford a reasonable opportunity...for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  29 U.S.C. § 1132(2).  The Tenth Circuit has held that receiving a "full and fair review" requires "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Sage v. Automation, Inc. Pension Plan & Trust*, 845 F.2d 885, 893-94 (10th Cir. 1988).

In each letter denying her claim, Defendant informed Plaintiff of the evidence it had

considered in reaching that decision. Plaintiff did not question the accuracy or reliability of the evidence. Furthermore, Plaintiff was repeatedly invited to submit any additional evidence she may have in support of her claim. Each time Plaintiff submitted additional medical information, Defendant considered that evidence, as well as all previously submitted evidence, and rendered a decision. Defendant provided Plaintiff a "full and fair hearing" in accord with the statutory requirements of § 1133.

**Substantial Evidence**

Plaintiff argues that Defendant's decision was arbitrary and not supported by the evidence. In determining whether Defendant's decision was arbitrary and capricious, the Court may only consider the arguments and evidence before Defendant at the time that it made its decision. "In effect, a curtain falls when the fiduciary completes its review, and for purposes of determining if substantial evidence supported the decision, the district court must evaluate the record as it was at the time of the decision." *Sandoval v. Aetna Life and Casualty Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992 ).

Under the substantial evidence test, the administrator's decision "need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within their knowledge to counter a claim that it was arbitrary and capricious." *Woolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1460 (10th Cir. 1991). The reviewing court should not substitute its judgment for the judgment of the fiduciary unless the actions of the fiduciary are not grounded on *"any* reasonable basis." *Id.* (emphasis in original). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker. Substantial evidence requires 'more than a scintilla but less than a

preponderance.'" *Sandoval*, 967 F.2d at 382 (quoting *Flint v. Sullivan*, 951 F.2d 264, 266 (10th Cir. 1991).

The facts in this case show that Defendant based its decision on substantial evidence. The medical records provided to Defendant reveal that on February 27, 1995, Plaintiff suffered an illness. She initially was treated by Dr. Owyang because her primary care physician was not available. Dr. Owyang diagnosed Plaintiff with acute bronchitis and began treatment. During the month of March, Dr. Owyang saw Plaintiff on five occasions and his notes reveal that Plaintiff was improving. By March 7, Dr. Owyang's notes state that Plaintiff reports that she is "feeling a lot better" and that her lungs appear normal although she still has a "deep and productive" cough. Doc. No. 000014. On March 21, 1995, Dr. Owyang notes that Plaintiff's "coughing is better." Doc. No. 000012. In his Attending Physician's Statement provided to Defendant on March 31, 1995, Dr. Owyang diagnosed Plaintiff with acute bronchitis which had improved. He described her physical limitations and restrictions as Class 4, which indicates that she should have moderate limitation of functional capacity and should be capable of sedentary clerical/administrative activity. Doc. Nos. 000017-000018.

At some point in March, Plaintiff began seeing her primary care physician, Dr. Amato. Dr. Amato referred Plaintiff to a Pulmonary Specialist and an Allergist to help determine the cause of her respiratory problem. Dr. Roethe, the Pulmonary Specialist, diagnosed Plaintiff with sinusitis and noted that she may have chronic bronchitis and may or may not have asthma. Doc. Nos. 000027-000028. Dr. Groncy, the Allergist, noted that Plaintiff showed mild reactivity to grass, weed, and environmental allergens. Doc. Nos. 000029-000030.

After performing more tests, Dr. Roethe noted that Plaintiff's "pulmonary function studies

15

clearly show mild but definitely present chronic obstructive lung disease of the chronic bronchitic type" and stated that she may have mild, or even subclinical asthma. Doc. Nos. 000038-000042. Additional letters and notes from Dr. Amato reveal that Plaintiff's lungs were markedly improved but that she was still weak, tired, fatigued easily and was having multiple joint pain. Doc. No. 000037. Dr. Amato subsequently wrote a letter to Defendant stating that "Ms. Hoffswell is constantly exposed to allergens and chronicly [sic] suffers with coughing, wheezing, chest discomfort and fatigue. Due to this she is unable to perform her work duties. I have extended Ms. Hoffswell's disability to June 13, 1995." Doc. No. 000049-000050.

     In June of 1995, Plaintiff relocated from California to New Mexico and began receiving medical care from Dr. Stern. The office notes from Dr. Stern reveal that Plaintiff visited her on a number of occasions for various medical problems. During the initial visit Plaintiff reported having chronic allergies and bronchitis but in subsequent visits Dr. Stern noted that Plaintiff's allergies were better and that Plaintiff was "without complaints and seems to be doing well." In a letter to Defendant dated October 10, 1996, Dr. Stern stated that Plaintiff "reports being unable to work in her previous office environment and I suspect the patient will remain sensitized to many office type environments." Doc. No. 000089. On November 25, 1996, Dr Stern diagnosed Plaintiff with bronchitis.

     Defendant reviewed Plaintiff's case a number of times and considered every additional piece of information provided in support of Plaintiff's claim. On the basis of this information, Defendant found that Plaintiff was totally disabled for the period of February 27, 1995 to March 29, 1995. No benefits were due, however, because the Short-Term Plan provides that disability benefits are reduced by the other income Plaintiff is eligible to receive for the same weekly period.

16

After March 29, 1995, Defendant found that Plaintiff had presented no objective findings indicating a disabling condition which prevented her from performing the material and substantial duties of her sedentary occupation and that the limitations indicated by Plaintiff's physicians were not supported by the objective findings and medical evidence submitted in support of Plaintiff's claim.

Although it is clear that Plaintiff suffered an illness and one doctor found Plaintiff disabled at least through June 13, 1997, Defendant's position that the objective findings of mild allergies, mild bronchitis, and mild or subclinical asthma do not support a finding of total disability as defined in the Plans is not unsubstantiated or an abuse of discretion.  While Defendant's decision may not be the only logical one, or even the best decision, the Court will not substitute its judgment for Defendant's judgment when the actions of Defendant are grounded on a reasonable basis and are supported by more than a scintilla of evidence.  *See Sandoval*, 967 F.2d at 382. Defendant is entitled to summary judgment as a matter of law.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment filed January 20, 1998 **[Doc. No. 42]** is hereby **GRANTED**.  This action is hereby dismissed with prejudice.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

**Attorney for Plaintiff**:
James G. Chakeras

**Attorneys for Defendant**:
Nickay B. Manning
Kathleen D. Lebeck